**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. _____

GERTI MUHO,

Plaintiff,

v.

ALPHONSE FLETCHER JR., JAMIE DIMON, ERMANNO
UNTERNAEHRER, YVES BLOCH, PETER C. HARVEY,
DEBORAH H. MIDANEK, MARIANNE RAJIC, DENIS J.
KIELY, TODD R. HARRISON, NEAL BRICKMAN,
ROBERT FIEDLER, CHAD M. SHANDLER, ELIZABETH M.
RIORDAN, JANE METCALF, HENRY E. GALLAGHER, JR.,
FLOYD SAUNDERS, JAY SHAWS, IVONA SINOVIC, DAVID E.
WILKS, MICHAEL S. MEADE, ALEX WEINGARTEN, J.P.
MORGAN CHASE & CO., PATTON BOGGS LLP., MORRISON
& FOERSTER LLP., BRICKMAN LEONARD & BAMBERGER, P.C.,
CITCO GROUP LTD., PASIG LTD., KASOWITZ BENSON
TORRES & FRIEDMAN LLP., RICHARDS, LAYTON &
FINGER, P.A., FLETCHER ASSET MANAGEMENT, INC.,
PATTERSON BELKNAP WEBB & TYLER LLP, SOLON
GROUP, INC.,LAMPOST CAPITAL, L.C., OGIER LLP.,
CITIBANK N.A., WILMINGTON TRUST, N.A., WALKERS LLP,
WEILL GOTSHALL & MANGES LLP, WILKS, LUKOFF &
BRACEGIRDLE, LLC., MCDERMOTT WILL & EMERY LLP.,
WEINGARTEN & BROWN LLP., CONNOLLY GALLAGHER LLP.,
PINNACLE FUND ADMINISTRATION, FOX ROTHSCHILD LLP.,
PORZIO, BROMBERG & NEWMAN, P.C. CITCO TRADING, INC.

Defendants.

_____/

**Affidavit 02. The Founding of GM Capital.**

I, Gerti Muho, having been duly sworn, depose and state as follows:

1.      I am the President of GM Capital Management, Inc., a Delaware corporation d/b/a

FILED by _____ D.C.

FEB 1 4 2014

STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA. – MIAMI

in the State of Florida as GM Capital, Inc. ("**GM Capital**"). GM Capital advises private investment funds and is a registered investment adviser with the U.S. Securities & Exchange Commission ("**SEC**"). I am GM Capital's Chief Executive; I have overall management responsibility for GM Capital including all investment decisions, strategic planning, and business development.

2.      In mid-2012 I learned about a fund-of-funds in need of a manager who could swiftly, and quietly, return the fund-of-funds to operational. I accepted the challenge and became the manager of the funds. The funds had assets of about $120 million, and had had over $1 billion as late as 2008.

3.      The funds had no lawyers or advisers; they only had one low level employee and two consultants. They also had no access to their cash. HSBC Bank USA N.A. ("**HSBC**") had frozen all accounts without cause and there was no certainty as to if, and when, it might unfreeze the accounts.

4.      I accepted the job as manager and became co-director alongside Alphonse Fletcher Jr. ("**Fletcher**" or "**Buddy**").  See below *Figure 1*. We were directors of all entities listed in Figure 1 except for Richcourt Holding, Inc. At Richcourt Holding, Inc. we were directors via our position as directors of RPGP Ltd., which was the corporation then serving as sole director of Richcourt Holding, Inc.

*Figure 1*



5.      Shortly after, I removed the Floyd Saunders, who as sole director appointed Buddy and me. I asked him to leave with grace (resign) in exchange for a fee as Secretary when the accounts were unfrozen. I could not retain a director whose job title was FAM Security Staff. See *Exhibit 00121*. Moreover, I had come to learn Floyd Saunders was someone who was willing to sign anything as long as he was paid a fee, had recently perjured in his affidavits, and who earned his living as career "puppet" director. I, and even Fletcher himself, did not believe the man knew the statements he was swearing oath to most of the time, as *Exhibit 00043* makes evident.

6.      I wasn't thrilled about Alphonse Fletcher Jr. having been called "The Black Bernie Madoff" by many, including the Wall Street Journal, but I knew I did not serve him. I owed him nothing. If anything, he owed me for thwarting a hostile inside takeover of his Fletcher fund. I felt comfortable knowing I could treat him as any other director: with respect, deference on certain matters, and, if needed, with swift, but commercially reasonable, prosecution.

7.     The problems the fund-of-funds (a fund whose investments are comprised of others investment funds) faced were much greater than that of frozen bank accounts. The funds had not even contacted their investors for four years. Worse still, the last time the investors were contacted, in 2008, they were contacted by middling personnel and home bankers who verbally told them FAM was taking a leading role, but never did so in writing.

8.     Furious investors were one of the many things I had to deal with. In addition I had to deal with the fund-companies that had no bank accounts, no employees who would share any knowledge, no accountants, no lawyers, and, as I later learned, no audits. The only thing they did have was an investigation carried out by the Cayman Islands Monetary Authority.

9.     To make matters worse, I had become exposed to employment liability because the fund-of-funds, it's four managers, and Richcourt Holding, Inc. owed employees as much as $2.5 million; the structure held the same amount on its balance sheet as negative equity. On the other hand, I learned that the funds had overexposed themselves to Fletcher International Leveraged, the FAM fund under liquidation in the Cayman for what the deciding Judge called a $140 million debt owed to the three Louisiana pension funds that had invested in the fund in 2008.

10.    As I looked further over the funds records, I learned that FAM had caused the funds exposure to  Fletcher International Leveraged and had caused further exposure even after the funds investors had requested that their money be returned to them. FAM and Citco told investors that their redemptions would not be paid as early as 2008 because the fund's holdings could not be liquidated. Interestingly enough, while the funds had placed gates on redemptions, they had open flood gates into FAM, Citco, and other insiders' funds.

11.     Then there was HSBC. I began to realize that the problems between Buddy Fletcher, the funds, and HSBC were more than meets the eye. HSBC claimed the bank accounts that had been frozen for some months. I found HSBC to be openly hostile to the fund-of-funds. HSBC, for reasons I did not understand then, refused even to pay for the fund-of-funds' yearly registrations with their offshore corporate registrars.

12.     HSBC, during my first call with them, told me they were ready to file an interpleader complaint against all assets and all entities. At the time, I did not know what an interpleader complaint was, but HSBC appeared confident and very knowledgeable of interpleaders; they quickly explained to me that the bank simply would ask a court to take all the money tying all assets in a lawsuit for a considerable amount of time.

13.     Lawsuits are a bad business and bad for business.  HSBC was informing me that a bank had the power to force an account owner to prove not only that the owner own the bank account, but that every other party that claimed ownership of the account was not the owner. The interpleader itself could alert parties (including the account owner's competition) of easy money.

14.     And HSBC's statement was direct: this is a bad suit for you. Its message was clear: "We don't care that you are the new manager. We can sue you just to watch you prove yourself— and you have no money for attorneys. And the kicker, you've agreed in advance to pay us all our expenses for this interpleader. It won't cost us a dime to watch you fight smoke and mirrors."

15.     HSBC made me jump through a million hoops to avoid that interpleader and close the fund-of-funds' accounts there. Before they would allow me to use or move any of the fund-of-funds' assets, HSBC required a few things of me. They wanted a new custodian, and they wanted

me to prove my authority over every one of the funds within the fund beyond all doubt. They even made me prove the quasi-governmental officials in the British Virgin Islands who signed certificates had been duly authorized to sign the certificates they were signing.

16.    When we hit an impasse, such as when I could not pay to register the Cayman entities that had been delisted for non-payment, HSBC was reasonable in finding alternative methods of verification.  They agreed, for example, to accept corporate certificates for the Cayman entities that Floyd Saunders signed.

17.    Floyd had no ties to the Cayman registrars or the Cayman authorities; he had lost all formal ties to the fund-of-funds, he had never documented his authority to serve as a signatory for the fund-of-funds, and he had never proven he was authorized to sign the corporate certificates he signed on behalf of the Caymans.

18.    Lastly, HSBC made sure the now-verified management of the fund-of-funds relieved HSBC of all of its violations, announced to investors who the individual responsible for the fund-of-funds was, and informed them that that individual would be relieving HSBC for a new custodian.

19.    I myself, singly as the funds' manager, relieved HSBC of all past liability, the extent of which, I'm sure, HSBC knew better than I did. I signed and sent a letter to the fund-of-funds investors, informing them of the change—the first formal communication, I later learned, the investors had received in over five years.

20.     Wilmington Trust N.A. took over as custodian of the fund-of-funds with Pinnacle Fund Administration Services LLC as administrator.[1] Later, I learned that this bifurcation of responsibilities meant I retained legal custody of the fund-of-funds assets, which only becomes an issue when one begins considering registration obligations the fund-of-funds had to the SEC.

21.     In order to bring the fund-of-funds to Wilmington Trust N.A., or any other U.S. based institution, I needed to register it with the Internal Revenue Server ("**IRS**"). I was very surprised to learn that the fund-of-funds had gone some twenty years without ever registering with the IRS.

22.     Fletcher was keen on my obtaining this information for the fund-of-funds using my personal information. His eagerness to receive the tax numbers and identifications contrasted, after some thought, with his complete avoidance of all discussions about IRS and SEC obligations.

23.     Initially, Fletcher's advice was helpful in dealing with HSBC and other difficulties the fund-of-funds presented to me in those first few months; yet his initial helpfulness faded.

24.     Fletcher began disappeared for days and his aid, Floyd Saunders, never knew anything. Still, I managed fine, and the fund-of-funds was becoming operational again.

25.     I was finalizing my deal with HSBC, Wilmington Trust, and Pinnacle Fund Administration Services LLC when Fletcher returned. Finalizing the deal meant HSBC would unfreeze the fund-of-funds' accounts and allowed it to resume operations for their investors.

---

[1] Because Wilmington Trust didn't serve as actual custodian, I, myself, became the funds custodian.

26.     Mr. Fletcher's return was marred by his requests to spend the fund-of-funds' assets. First, he requested that the fund-of-funds send money to Kirkland & Ellis LLP, to whom I paid $2,400,000 in three installments.

27.     On December 31, 2012, Fletcher came to me and said that Fletcher International, Inc. ("**FII**") had a taxable gain of $130 million in 2012, which FII could avoid paying taxes on if it could get rid of substantially all of its assets. He suggested that Soundview Elite Ltd., one of the funds within the fund I managed and continue to manage, should buy FII's assets. Fletcher said the $4,000,000 price he suggested made the assets a real steal, as FII's primary concern was the avoidance of $50,000,000 in taxes. I agreed. The sale was consummated that same day, as required for tax purposes, and Soundview Elite Ltd. agreed to pay FII as soon as its accounts were unfrozen.

28.     In February 2013, I learned FII had entered in an agreement to transfer all the property sold to Soundview Elite Ltd. on December 31, 2012 to Fletcher International Ltd. On February 28, 2013, Fletcher took it upon himself to improve the governance of the funds that were part of the fund-of-funds by asking Deborah H. Midanek to join the board of directors of the funds.

29.     The diagram below represents a structure of the fund-of-funds at the time. The funds within the fund-of-funds are represented in the diagram below by the smaller, stub-like boxes. Those funds were owned and managed by the management companies. The directors of the funds had judiciary duties to represent the funds investors and provide oversight over the funds management. Adding an independent director to the funds within the fund-of-funds would have

indeed improved the overall governance of the fund-of-funds for the investors' benefits—

unfortunately, Deborah H. Midanek turned out to be a crook.

*Figure 2*



30.     On March 12, 2013, I wrote and signed resolutions adding Deborah H. Midanek to

the board of directors of the funds within the fund-of-funds. On March 22, 2013, Fletcher, whom I

had yet to remove from the board of directors, signed the resolutions I had signed ten days earlier.

31.     Upon reviewing the resolutions I received from Fletcher, I discovered that

Fletcher had altered the resolutions I had written and signed for New Wave Fund SPC, one of the

funds that was part of the fund-of-funds. See *Exhibit 00041*.

32.     Consequently, and in satisfaction of all pertinent rules and regulations, I removed

Mr. Fletcher from the board of directors of each of the entities that was part of the fund-of-funds:

the funds—the management companies that owned and managed the funds, Richcourt

Acquisitions, Inc., and RPGP, Ltd. With RPGP Ltd. as sole director of Richcourt Holding, Inc.,

removing Fletcher from RPGP Ltd. had the additional effect of removing him from Richcourt Holding, Inc.

33.     I began seeking the advice of independent counsel to help me do away with the sway Fletcher and Fletcher Asset Management, Inc. had over the fund-of-funds when I first learned that Fletcher had transferred to Fletcher International Ltd. without any authority and without my knowledge.

34.     Fletcher's notoriety, unfortunately, made finding able independent counsel difficult. Crowell & Moring LLP was the only firm I found that agreed to aid me with my task of removing Fletcher's sway over the fund-of-funds. Fletcher's sway was solely the result of his position with Fletcher Asset Management, Inc., which owned RPGP Ltd.

35.     In April 2013, I first learned that Kirkland & Ellis LLP had refused itself as counsel to the fund-of-funds, and to Fletcher Asset Management, Inc. This was of particular significance because until then I had rationalized the departure of other counsel at Fletcher Asset Management, Inc. as the result of Fletcher's refusal to pay. I could not rationalize the same for Kirkland & Ellis LLP's departure because I had advanced $2,400,000 to them from the fund-of-funds alone. Their departure led me to believe that they must have witnessed something illegal that had required them to recuse themselves.

36.     I also learned, in April, that Fletcher and Fletcher Asset Management, Inc. intended to forego SEC and IRS obligations to register the fund-of-funds and their transactions with each agency. Fletcher Asset Management, Inc. itself, I learned, had no intentions of updating the information it had previously listed with the SEC. In order to meet my obligations to

the investors of the fund-of-funds as well as my obligations to the law of the United States and the pertinent jurisdictions without causing harm to any shareholder, including Fletcher Asset Management, Inc., I officially transferred management of the fund-of-funds to GM Capital on April 29, 2013.

37.     On April 29, 2013, as sole director of the four management companies shown in four large squares in the Figure 3, below, I first sold all the issued and outstanding voting shares each of the four management companies held in each of the funds that were part of the fund-of-funds to a Delaware entity, which paid the four management companies for the shares in full consideration that same day.

*Figure 3*



38.     On April 29, 2013, RPGP Ltd., then sole member of the board of directors at Richcourt Holding, Inc., added me to the board of directors of Richcourt Holding, Inc. prior to resigning. I added Leveraged Hawk, Inc. in order to meet idiosyncratic requirements of local corporate law.

39.     All actions were ratified by sole shareholder Richcourt Acquisitions, Inc. The same day, Richcourt Holding, Inc. sold all issued and outstanding shares it held in the four management companies for consideration paid in full on the same day to Leveraged Hawk, Inc. All transactions fully complied with local corporate law and were duly ratified.

*Figure 4*



40.     On April 29, 2013, Richcourt Holding, Inc., in effect, erased the four management companies and took all of their possessions, including all the shares the four management companies held in Leveraged Hawk, Inc., for its own. After Leveraged Hawk, Inc. and the entities under its dominion merged into Leveraged Hawk, Inc., with the merger becoming effective June 6, 2013 and automatically binding on all parties by operation of law June 12, 2013, the structure of the fund-of-funds was simplified to that represented by the figure below.

41.     GM Capital, an SEC registered investment adviser, replaced the four failing management companies. The investors of the funds remained investors of Leveraged Hawk, Inc. as there were no changes resulting from the merger in share composition or in asset value. Leveraged Hawk, Inc. replaced the bloated, obscure, and costly structure with one simple entity and software, saving potentially over $1,000,000 a year in outside fees alone.

42.     I was the manager of the fund-of-funds before the April 29, 2013 merger, and, solely due to my position with GM Capital and its predecessors, I remain the manager to this day.

43.     Fletcher Asset Management, Inc. owned RPGP, Ltd. then and, I believe, continues to do so today. Richcourt Holding, Inc. remains the largest shareholder of Leveraged Hawk, Inc. and has been relieved from so much more than it ever bargain for.

*Figure 5*

Gerti Muho, Plaintiff

Sworn to and signed before me this _14th_ of February 2014

_____

**Affidavit 2 Exhibits**

**Muho v. Fletcher et al.**

# Exhibit 041

# Muho v. Fletcher et al.

**Exhibit 041**
**Muho v. Fletcher et al.**

**Gerti Muho**                                         Saturday, January 4, 2014 at 9:49:54 PM Eastern Standard Time

**Subject:** Re: Richcourt directors
**Date:** Tuesday, March 26, 2013 at 6:38:57 PM Eastern Daylight Time
**From:** Alphonse Fletcher <af@fam91.com>
**To:** FES {FSaunders} <FSaunders@fletcher.com>
**CC:** DJK {DKiely} <dkiely@kielyllp.com>, GEM GMuho <GMuho@fletcher.com>

Hi, Floyd. Attached are the executed resolutions. It is true that Deborah is replacing Gerti as a director of the Richcourt funds.


On Mar 26, 2013, at 3:34 PM, FES {FSaunders} wrote:

HI Buddy,
Have you had a chance to sign these resolutions appointing Solon Group as director? If so can you send them to me. Also Deborah has mentioned on a few occasions that Solon would be replacing Gerti on the board but I have not heard anything definite from you. Can you please let me know when or if that may happen.
Floyd
<DHM Fund Director.pdf>

**Exhibit 041**          **Page 1 of 1**
**Muho v. Fletcher et al.**

Case No _____

Exhibit 041
Muho v. Fletcher et al.

File 10.pdf

File 11.pdf

File 12.pdf

File 13.pdf

File 14.pdf

File 15.pdf

File 16.pdf

File 01.pdf

File 02.pdf

File 03.pdf

File 04.pdf

File 05.pdf

File 06.pdf

File 07.pdf

File 08.pdf

File 09.pdf

Exhibit 041
Muho v. Fletcher et al.

Case No _____

**Exhibit 041**
**Muho v. Fletcher et al.**

*RICHCOURT COMPOSITE INC.*

*WRITTEN CONSENT*
*OF RICHCOURT COMPOSITE INC.*

The Board of Directors (the "*Board*") of Richcourt Composite Inc., a company organized under the laws of the British Virgin Islands (the "*Company*"), desires to appoint Solon Group, Inc., a corporation organized under the laws of the State of New York ("*Solon*"), to serve as a member of the Company's Board.

The undersigned, constituting all the members of the Company's Board and acting by this unanimous written consent pursuant to Article 82 of the Company's Articles of Association, therefore resolve that:

• Solon be, and it hereby is appointed a member of the Company's Board;

• all documents, agreements and instruments previously executed and delivered, and any and all actions previously taken directly or indirectly by any director of the Company in connection with or related to the matters set forth in, or reasonably contemplated or implied by, the foregoing resolutions be, and each of them hereby is, adopted, ratified, confirmed and approved in all respects and for all purposes as the acts and deeds of the Company;

• all appropriate officers and directors of the Company will be, and they hereby are, authorized, empowered and directed, in the name and on behalf of the Company, to negotiate, prepare and execute such instruments and documents as are advisable in order to process the transactions listed above and to incur all such fees and expenses as shall be reasonable in order to carry out fully the intent and purposes of these resolutions; and

• the preceding resolutions supersede any and all other resolutions with respect to the matters above.

This consent is being signed on Tuesday, March 12, 2013:

By _____
Name: Alphonse Fletcher, Jr.
Title: Director
26 March 2013

By _____
Name: Geru Muho
Title: Director

**Exhibit 041**
**Muho v. Fletcher et al.**

Exhibit 041
Muho v. Fletcher et al.

*RICHOURT EURO STRATEGIES*

*WRITTEN CONSENT*
*OF RICHOURT EURO STRATEGIES*

The Board of Directors (the "***Board***") of Richourt Euro Strategies, a company organized under the laws of the British Virgin Islands (the "***Company***"), desires to appoint Solon Group, Inc., a corporation organized under the laws of the State of New York ("***Solon***"), to serve as a member of the Company's Board.

The undersigned, constituting all the members of the Company's Board and acting by this unanimous written consent pursuant to Article 81 of the Company's Articles of Association, therefore resolve that:

- Solon be, and it hereby is appointed a member of the Company's Board;

- all documents, agreements and instruments previously executed and delivered, and any and all actions previously taken directly or indirectly by any director of the Company in connection with or related to the matters set forth in, or reasonably contemplated or implied by, the foregoing resolutions be, and each of them hereby is, adopted, ratified, confirmed and approved in all respects and for all purposes as the acts and deeds of the Company;

- all appropriate officers and directors of the Company will be, and they hereby are, authorized, empowered and directed, in the name and on behalf of the Company, to negotiate, prepare and execute such instruments and documents as are advisable in order to process the transactions listed above and to incur all such fees and expenses as shall be reasonable in order to carry out fully the intent and purposes of these resolutions; and

- the preceding resolutions supersede any and all other resolutions with respect to the matters above.

This consent is being signed on Tuesday, March 12, 2013:

By _____
Name: Alphonse Fletcher, Jr.
Title: Director
26 March 2013

By _____
Name: Gerti Muho
Title: Director

Exhibit 041
Muho v. Fletcher et al.

Exhibit 041
Muho v. Fletcher et al.

### RICHCOURT TOP STARS I FUND LTD

*WRITTEN CONSENT*
*OF RICHCOURT TOP STARS I FUND LTD*

The Board of Directors (the "***Board***") of Richcourt Top Stars I Fund Ltd, a company organized under the laws of the Bahamas (the "***Company***"), desires to appoint Solon Group, Inc., a corporation organized under the laws of the State of New York ("***Solon***"), to serve as a member of the Company's Board.

The undersigned, constituting all the members of the Company's Board and acting by this unanimous written consent pursuant to Article 54(A) of the Company's Articles of Association, therefore resolve that:

- Solon be, and it hereby is appointed a member of the Company's Board;

- all documents, agreements and instruments previously executed and delivered, and any and all actions previously taken directly or indirectly by any director of the Company in connection with or related to the matters set forth in, or reasonably contemplated or implied by, the foregoing resolutions be, and each of them hereby is, adopted, ratified, confirmed and approved in all respects and for all purposes as the acts and deeds of the Company;

- all appropriate officers and directors of the Company will be, and they hereby are, authorized, empowered and directed, in the name and on behalf of the Company, to negotiate, prepare and execute such instruments and documents as are advisable in order to process the transactions listed above and to incur all such fees and expenses as shall be reasonable in order to carry out fully the intent and purposes of these resolutions; and

- the preceding resolutions supersede any and all other resolutions with respect to the matters above.

This consent is being signed on Tuesday, March 12, 2013:

By _____
Name: Alphonse Fletcher, Jr.
Title: Director
26 March 2013

By _____
Name: Gerti Muho
Title: Director

Exhibit 041
Muho v. Fletcher et al.

Exhibit 041
Muho v. Fletcher et al.

### SOUNDVIEW COMPOSITE LTD

### WRITTEN CONSENT
#### OF SOUNDVIEW COMPOSITE LTD

The Board of Directors (the "*Board*") of Soundview Composite Ltd, a company organized under the laws of the Cayman Islands (the "*Company*"), desires to appoint Solon Group, Inc., a corporation organized under the laws of the State of New York ("*Solon*"), to serve as a member of the Company's Board.

The undersigned, constituting all the members of the Company's Board and acting by this unanimous written consent pursuant to Article 110 of the Company's Articles of Association, therefore resolve that:

- Solon be, and it hereby is appointed a member of the Company's Board;

- all documents, agreements and instruments previously executed and delivered, and any and all actions previously taken directly or indirectly by any director of the Company in connection with or related to the matters set forth in, or reasonably contemplated or implied by, the foregoing resolutions be, and each of them hereby is, adopted, ratified, confirmed and approved in all respects and for all purposes as the acts and deeds of the Company;

- all appropriate officers and directors of the Company will be, and they hereby are, authorized, empowered and directed, in the name and on behalf of the Company, to negotiate, prepare and execute such instruments and documents as are advisable in order to process the transactions listed above and to incur all such fees and expenses as shall be reasonable in order to carry out fully the intent and purposes of these resolutions; and

- the preceding resolutions supersede any and all other resolutions with respect to the matters above.

This consent is being signed on Tuesday, March 12, 2013:


By _____
Name: Alphonse Fletcher, Jr.
Title: Director
26 March 2013

By _____
Name: Gerti Muho
Title: Director

Exhibit 041
Muho v. Fletcher et al.

Exhibit 041
Muho v. Fletcher et al.

*SOUNDVIEW ELITE LTD.*

*WRITTEN CONSENT
OF SOUNDVIEW ELITE LTD.*

The Board of Directors (the "**Board**") of Soundview Elite Ltd., a company organized under the laws of the Cayman Islands (the "**Company**"), desires to appoint Solon Group, Inc., a corporation organized under the laws of the State of New York ("**Solon**"), to serve as a member of the Company's Board.

The undersigned, constituting all the members of the Company's Board and acting by this unanimous written consent pursuant to Article 111 of the Company's Articles of Association, therefore resolve that:

• Solon be, and it hereby is appointed a member of the Company's Board;

• all documents, agreements and instruments previously executed and delivered, and any and all actions previously taken directly or indirectly by any director of the Company in connection with or related to the matters set forth in, or reasonably contemplated or implied by, the foregoing resolutions be, and each of them hereby is, adopted, ratified, confirmed and approved in all respects and for all purposes as the acts and deeds of the Company;

• all appropriate officers and directors of the Company will be, and they hereby are, authorized, empowered and directed, in the name and on behalf of the Company, to negotiate, prepare and execute such instruments and documents as are advisable in order to process the transactions listed above and to incur all such fees and expenses as shall be reasonable in order to carry out fully the intent and purposes of these resolutions; and

• the preceding resolutions supersede any and all other resolutions with respect to the matters above.

This consent is being signed on Tuesday, March 12, 2013:

By _____          By _____
Name: Alphonse Fletcher, Jr.             Name: Gerti Muho
Title: Director                          Title: Director
26 March 2013

Exhibit 041
Muho v. Fletcher et al.

Exhibit 041
Muho v. Fletcher et al.

*SOUNDVIEW PREMIUM, LTD.*

*WRITTEN CONSENT*
*OF SOUNDVIEW PREMIUM, LTD.*

The Board of Directors (the "***Board***") of Soundview Premium, Ltd., a company organized under the laws of the Cayman Islands (the "***Company***"), desires to appoint Solon Group, Inc., a corporation organized under the laws of the State of New York ("***Solon***"), to serve as a member of the Company's Board.

The undersigned, constituting all the members of the Company's Board and acting by this unanimous written consent pursuant to Article 111 of the Company's Articles of Association, therefore resolve that:

• Solon be, and it hereby is appointed a member of the Company's Board;

• all documents, agreements and instruments previously executed and delivered, and any and all actions previously taken directly or indirectly by any director of the Company in connection with or related to the matters set forth in, or reasonably contemplated or implied by, the foregoing resolutions be, and each of them hereby is, adopted, ratified, confirmed and approved in all respects and for all purposes as the acts and deeds of the Company;

• all appropriate officers and directors of the Company will be, and they hereby are, authorized, empowered and directed, in the name and on behalf of the Company, to negotiate, prepare and execute such instruments and documents as are advisable in order to process the transactions listed above and to incur all such fees and expenses as shall be reasonable in order to carry out fully the intent and purposes of these resolutions; and

• the preceding resolutions supersede any and all other resolutions with respect to the matters above.

This consent is being signed on Tuesday, March 12, 2013:

By _____
Name: Alphonse Fletcher, Jr.
Title: Director
26 March 2013

By _____
Name: Geza Muho
Title: Director

Exhibit 041
Muho v. Fletcher et al.

Exhibit 041
Muho v. Fletcher et al.

*SOUNDVIEW STAR LTD.*

*WRITTEN CONSENT
OF SOUNDVIEW STAR LTD.*

The Board of Directors (the "*Board*") of Soundview Star Ltd., a company organized under the laws of the Cayman Islands (the "*Company*"), desires to appoint Solon Group, Inc., a corporation organized under the laws of the State of New York ("*Solon*"), to serve as a member of the Company's Board.

The undersigned, constituting all the members of the Company's Board and acting by this unanimous written consent pursuant to Article 111 of the Company's Articles of Association, therefore resolve that:

- Solon be, and it hereby is appointed a member of the Company's Board;

- all documents, agreements and instruments previously executed and delivered, and any and all actions previously taken directly or indirectly by any director of the Company in connection with or related to the matters set forth in, or reasonably contemplated or implied by, the foregoing resolutions be, and each of them hereby is, adopted, ratified, confirmed and approved in all respects and for all purposes as the acts and deeds of the Company;

- all appropriate officers and directors of the Company will be, and they hereby are, authorized, empowered and directed, in the name and on behalf of the Company, to negotiate, prepare and execute such instruments and documents as are advisable in order to process the transactions listed above and to incur all such fees and expenses as shall be reasonable in order to carry out fully the intent and purposes of these resolutions; and

- the preceding resolutions supersede any and all other resolutions with respect to the matters above.

This consent is being signed on Tuesday, March 12, 2013:

By _____
Name: Alphonse Fletcher, Jr.
Title: Director
26 March 2013

By _____
Name: Gerti Muho
Title: Director

Exhibit 041
Muho v. Fletcher et al.

Exhibit 041
Muho v. Fletcher et al.

*AMERICA ALTERNATIVE INVESTMENTS, INC.*

*WRITTEN CONSENT*
*OF AMERICA ALTERNATIVE INVESTMENTS, INC.*

The Board of Directors (the "*Board*") of America Alternative Investments, Inc., a company organized under the laws of the British Virgin Islands (the "*Company*"), desires to appoint Solon Group, Inc., a corporation organized under the laws of the State of New York ("*Solon*"), to serve as a member of the Company's Board.

The undersigned, constituting all the members of the Company's Board and acting by this unanimous written consent pursuant to Article 76 of the Company's Articles of Association, therefore resolve that:

• Solon be, and it hereby is appointed a member of the Company's Board;

• all documents, agreements and instruments previously executed and delivered, and any and all actions previously taken directly or indirectly by any director of the Company in connection with or related to the matters set forth in, or reasonably contemplated or implied by, the foregoing resolutions be, and each of them hereby is, adopted, ratified, confirmed and approved in all respects and for all purposes as the acts and deeds of the Company;

• all appropriate officers and directors of the Company will be, and they hereby are, authorized, empowered and directed, in the name and on behalf of the Company, to negotiate, prepare and execute such instruments and documents as are advisable in order to process the transactions listed above and to incur all such fees and expenses as shall be reasonable in order to carry out fully the intent and purposes of these resolutions; and

• the preceding resolutions supersede any and all other resolutions with respect to the matters above.

This consent is being signed on Tuesday, March 12, 2013:

By _____
Name: Alphonse Fletcher, Jr.
Title: Director
26 March 2013

By _____
Name: Gerti Muho
Title: Director

Exhibit 041
Muho v. Fletcher et al.

Exhibit 041
Muho v. Fletcher et al.

*ELITE DESIGNATED*

*WRITTEN CONSENT*
*OF ELITE DESIGNATED*

The Board of Directors (the "***Board***") of Elite Designated, a company organized under the laws of the Cayman Islands (the "***Company***"), desires to appoint Solon Group, Inc., a corporation organized under the laws of the State of New York ("***Solon***"), to serve as a member of the Company's Board.

The undersigned, constituting all the members of the Company's Board and acting by this unanimous written consent pursuant to Article 144 of the Company's Articles of Association, therefore resolve that:

- Solon be, and it hereby is appointed a member of the Company's Board;

- all documents, agreements and instruments previously executed and delivered, and any and all actions previously taken directly or indirectly by any director of the Company in connection with or related to the matters set forth in, or reasonably contemplated or implied by, the foregoing resolutions be, and each of them hereby is, adopted, ratified, confirmed and approved in all respects and for all purposes as the acts and deeds of the Company;

- all appropriate officers and directors of the Company will be, and they hereby are, authorized, empowered and directed, in the name and on behalf of the Company, to negotiate, prepare and execute such instruments and documents as are advisable in order to process the transactions listed above and to incur all such fees and expenses as shall be reasonable in order to carry out fully the intent and purposes of these resolutions; and

- the preceding resolutions supersede any and all other resolutions with respect to the matters above.

This consent is being signed on Tuesday, March 12, 2013:

By _____          By _____
Name: Alphonse Fletcher, Jr.          Name: Gerti Muho
Title: Director                        Title: Director
26 March 2013

Exhibit 041
Muho v. Fletcher et al.

Exhibit 041
Muho v. Fletcher et al.

*NEW WAVE FUND SPC*

*WRITTEN CONSENT*
*OF NEW WAVE FUND SPC*

The Board of Directors (the "***Board***") of New Wave Fund SPC, a company organized under the laws of the Cayman Islands (the "***Company***"), desires to appoint Solon Group, Inc., a corporation organized under the laws of the State of New York ("***Solon***"), to serve as a member of the Company's Board.

The undersigned, constituting all the members of the Company's Board and acting by this unanimous written consent pursuant to Article 113 of the Company's Articles of Association, therefore resolve that:

- Solon be, and it hereby is appointed a member of the Company's Board;

- all documents, agreements and instruments previously executed and delivered, and any and all actions previously taken directly or indirectly by any director of the Company in connection with or related to the matters set forth in, or reasonably contemplated or implied by, the foregoing resolutions be, and each of them hereby is, adopted, ratified, confirmed and approved in all respects and for all purposes as the acts and deeds of the Company;

- all appropriate officers and directors of the Company will be, and they hereby are, authorized, empowered and directed, in the name and on behalf of the Company, to negotiate, prepare and execute such instruments and documents as are advisable in order to process the transactions listed above and to incur all such fees and expenses as shall be reasonable in order to carry out fully the intent and purposes of these resolutions; and

- the preceding resolutions supersede any and all other resolutions with respect to the matters above.

This consent is being signed on Tuesday, March 12, 2013:

By _____          By _____ March 25, 2013
Name: Alphonse Fletcher, Jr.             Name: Garth Muho
Title: Director                          Title: Director
    26 March 2013

Exhibit 041
Muho v. Fletcher et al.

**Exhibit 041**
**Muho v. Fletcher et al.**

*STAR DESIGNATED*

*WRITTEN CONSENT*
*OF STAR DESIGNATED*

The Board of Directors (the "*Board*") of Star Designated, a company organized under the laws of the Cayman Islands (the "*Company*"), desires to appoint Solon Group, Inc., a corporation organized under the laws of the State of New York ("*Solon*"), to serve as a member of the Company's Board.

The undersigned, constituting all the members of the Company's Board and acting by this unanimous written consent pursuant to Article 144 of the Company's Articles of Association, therefore resolve that:

- Solon be, and it hereby is appointed a member of the Company's Board;

- all documents, agreements and instruments previously executed and delivered, and any and all actions previously taken directly or indirectly by any director of the Company in connection with or related to the matters set forth in, or reasonably contemplated or implied by, the foregoing resolutions be, and each of them hereby is, adopted, ratified, confirmed and approved in all respects and for all purposes as the acts and deeds of the Company;

- all appropriate officers and directors of the Company will be, and they hereby are, authorized, empowered and directed, in the name and on behalf of the Company, to negotiate, prepare and execute such instruments and documents as are advisable in order to process the transactions listed above and to incur all such fees and expenses as shall be reasonable in order to carry out fully the intent and purposes of these resolutions; and

- the preceding resolutions supersede any and all other resolutions with respect to the matters above.

This consent is being signed on Tuesday, March 12, 2013:

By _____          By _____
Name: Alphonse Fletcher, Jr.          Name: Gerti Muho
Title: Director                       Title: Director
    26 March 2013

**Exhibit 041**
**Muho v. Fletcher et al.**

Exhibit 041
Muho v. Fletcher et al.

*OPTIMA ABSOLUTE RETURN FUND LTD.*

*WRITTEN CONSENT*
*OF OPTIMA ABSOLUTE RETURN FUND LTD.*

The Board of Directors (the "*Board*") of Optima Absolute Return Fund Ltd., a company organized under the laws of the British Virgin Islands (the "*Company*"), desires to appoint Solon Group, Inc., a corporation organized under the laws of the State of New York ("*Solon*"), to serve as a member of the Company's Board.

The undersigned, constituting all the members of the Company's Board and acting by this unanimous written consent pursuant to Article 82 of the Company's Articles of Association, therefore resolve that:

- Solon be, and it hereby is appointed a member of the Company's Board;

- all documents, agreements and instruments previously executed and delivered, and any and all actions previously taken directly or indirectly by any director of the Company in connection with or related to the matters set forth in, or reasonably contemplated or implied by, the foregoing resolutions be, and each of them hereby is, adopted, ratified, confirmed and approved in all respects and for all purposes as the acts and deeds of the Company;

- all appropriate officers and directors of the Company will be, and they hereby are, authorized, empowered and directed, in the name and on behalf of the Company, to negotiate, prepare and execute such instruments and documents as are advisable in order to process the transactions listed above and to incur all such fees and expenses as shall be reasonable in order to carry out fully the intent and purposes of these resolutions; and

- the preceding resolutions supersede any and all other resolutions with respect to the matters above.

This consent is being signed on Tuesday, March 12, 2013:

By _____
Name: Alphonse Fletcher, Jr.
Title: Director
26 March 2013

By _____
Name: Gerti Muho
Title: Director

Exhibit 041
Muho v. Fletcher et al.

Exhibit 041
Muho v. Fletcher et al.

*PREMIUM DESIGNATED*

*WRITTEN CONSENT*
*OF PREMIUM DESIGNATED*

The Board of Directors (the "*Board*") of Premium Designated, a company organized under the laws of the Cayman Islands (the "*Company*"), desires to appoint Solon Group, Inc., a corporation organized under the laws of the State of New York ("*Solon*"), to serve as a member of the Company's Board.

The undersigned, constituting all the members of the Company's Board and acting by this unanimous written consent pursuant to Article 144 of the Company's Articles of Association, therefore resolve that:

- Solon be, and it hereby is appointed a member of the Company's Board;

- all documents, agreements and instruments previously executed and delivered, and any and all actions previously taken directly or indirectly by any director of the Company in connection with or related to the matters set forth in, or reasonably contemplated or implied by, the foregoing resolutions be, and each of them hereby is, adopted, ratified, confirmed and approved in all respects and for all purposes as the acts and deeds of the Company;

- all appropriate officers and directors of the Company will be, and they hereby are, authorized, empowered and directed, in the name and on behalf of the Company, to negotiate, prepare and execute such instruments and documents as are advisable in order to process the transactions listed above and to incur all such fees and expenses as shall be reasonable in order to carry out fully the intent and purposes of these resolutions; and

- the preceding resolutions supersede any and all other resolutions with respect to the matters above.

This consent is being signed on Tuesday, March 12, 2013:

By _____
Name: Alphonse Fletcher, Jr.
Title: Director
26 March 2013

By _____
Name: Getti Muho
Title: Director

Exhibit 041
Muho v. Fletcher et al.

Exhibit 041
Muho v. Fletcher et al.

*PITAGORA FUND LTD.*

*WRITTEN CONSENT*
*OF PITAGORA FUND LTD.*

The Board of Directors (the "**Board**") of Pitagora Fund Ltd., a company organized under the laws of the Cayman Islands (the "**Company**"), desires to appoint Solon Group, Inc., a corporation organized under the laws of the State of New York ("**Solon**"), to serve as a member of the Company's Board.

The undersigned, constituting all the members of the Company's Board and acting by this unanimous written consent pursuant to Article 111 of the Company's Articles of Association, therefore resolve that:

• Solon be, and it hereby is appointed a member of the Company's Board;

• all documents, agreements and instruments previously executed and delivered, and any and all actions previously taken directly or indirectly by any director of the Company in connection with or related to the matters set forth in, or reasonably contemplated or implied by, the foregoing resolutions be, and each of them hereby is, adopted, ratified, confirmed and approved in all respects and for all purposes as the acts and deeds of the Company;

• all appropriate officers and directors of the Company will be, and they hereby are, authorized, empowered and directed, in the name and on behalf of the Company, to negotiate, prepare and execute such instruments and documents as are advisable in order to process the transactions listed above and to incur all such fees and expenses as shall be reasonable in order to carry out fully the intent and purposes of these resolutions; and

• the preceding resolutions supersede any and all other resolutions with respect to the matters above.

This consent is being signed on Tuesday, March 12, 2013:

By _____
Name: Alphonse Fletcher, Jr.
Title: Director
26 March 2013

By _____
Name: Gerti Muho
Title: Director

Exhibit 041
Muho v. Fletcher et al.

Case No _____

Exhibit 041
Muho v. Fletcher et al.

*RICHCOURT ALLWEATHER FUND INC.*

*WRITTEN CONSENT*
*OF RICHCOURT ALLWEATHER FUND INC.*

The Board of Directors (the "*Board*") of Richcourt Allweather Fund Inc., a company organized under the laws of the British Virgin Islands (the "*Company*"), desires to appoint Solon Group, Inc., a corporation organized under the laws of the State of New York ("*Solon*"), to serve as a member of the Company's Board.

The undersigned, constituting all the members of the Company's Board and acting by this unanimous written consent pursuant to Article 81 of the Company's Articles of Association, therefore resolve that:

- Solon be, and it hereby is appointed a member of the Company's Board;

- all documents, agreements and instruments previously executed and delivered, and any and all actions previously taken directly or indirectly by any director of the Company in connection with or related to the matters set forth in, or reasonably contemplated or implied by, the foregoing resolutions be, and each of them hereby is, adopted, ratified, confirmed and approved in all respects and for all purposes as the acts and deeds of the Company;

- all appropriate officers and directors of the Company will be, and they hereby are, authorized, empowered and directed, in the name and on behalf of the Company, to negotiate, prepare and execute such instruments and documents as are advisable in order to process the transactions listed above and to incur all such fees and expenses as shall be reasonable in order to carry out fully the intent and purposes of these resolutions; and

- the preceding resolutions supersede any and all other resolutions with respect to the matters above.

This consent is being signed on Tuesday, March 12, 2013:

By _____            By _____
Name: Alphonse Fletcher, Jr.          Name: Gerti Muho
Title: Director                       Title: Director
     26 March 2013

Exhibit 041
Muho v. Fletcher et al.

**Exhibit 041**
**Muho v. Fletcher et al.**

*RICHCOURT HOLDING, INC.*

*WRITTEN CONSENT*
*OF RICHCOURT HOLDING, INC.*

The Board of Directors (the "**Board**") of Richcourt Holding, Inc., a company organized under the laws of the British Virgin Islands (the "**Company**"), desires to appoint Solon Group, Inc., a corporation organized under the laws of the State of New York ("**Solon**"), to serve as a member of the Company's Board.

The undersigned, constituting all the members of the Company's Board and acting by this unanimous written consent therefore resolve that:

- Solon be, and it hereby is appointed a member of the Company's Board;

- all documents, agreements and instruments previously executed and delivered, and any and all actions previously taken directly or indirectly by any director of the Company in connection with or related to the matters set forth in, or reasonably contemplated or implied by, the foregoing resolutions be, and each of them hereby is, adopted, ratified, confirmed and approved in all respects and for all purposes as the acts and deeds of the Company;

- all appropriate officers and directors of the Company will be, and they hereby are, authorized, empowered and directed, in the name and on behalf of the Company, to negotiate, prepare and execute such instruments and documents as are advisable in order to process the transactions listed above and to incur all such fees and expenses as shall be reasonable in order to carry out fully the intent and purposes of these resolutions; and

- the preceding resolutions supersede any and all other resolutions with respect to the matters above.

This consent is being signed on Tuesday, March 12, 2013:

By _____
Name: Alphonse Fletcher, Jr.
Title: Director
26 March 2013

By _____
Name: Gerti Muho
Title: Director

**Exhibit 041**
**Muho v. Fletcher et al.**

Case No _____

# Exhibit 043

# Muho v. Fletcher et al.

Exhibit 043
Muho v. Fletcher et al.

**Gerti Muho**

| | |
|---|---|
| **From:** | AF {AFletcher} <AFletcher@fletcher.com> |
| **Sent:** | Wednesday, September 12, 2012 5:52 PM |
| **To:** | SAT {STurner} |
| **Cc:** | GEM {GMuho} |
| **Subject:** | Re: Credit Suisse |

Please try to have a casual chat with Floyd, Teddy, or both about the importance of not signing documents that they do not know are true.  Is the deal with CS done or awaiting Trustee approval?

On Sep 12, 2012, at 2:44 PM, SAT {STurner} wrote:

David said that CS was entitled to hold the HLX preferred (and the cash) according to the trading agreements.  His commentary was that YCST negotiated the number down from a total of $10MM they were holding and that FILB now has access to cash (probably for paying YCST).

I understand your point about the "few sentences".  I will provide the first sentence only and let the numbers speak for themselves.

**Exhibit 121**

**Muho v. Fletcher et al.**

●●○○○ Verizon   LTE        1:42 PM

Exhibit 121
Muño v. Fletcher et al.

‹ Search                                    Edit

## FES FSaunders

Security Staff
FAM

home fax
(631) 598-2827                          📞

work
(212) 284-4751                          📞

mobile
(917) 684-9751                   💬   📞

FaceTime                          📹   📞

Email
FSaunders@fletcher.com

home

321 West 29th Street







Favorites   Recents   Contacts   Keypad   Voicemail

Exhibit 121
Muño v. Fletcher et al.